**ZACHARIE & CO., vs. ROGERS & HARRISON.**

ON A RE-HEARING.

EASTERN DIS.
July, 1841.

ZACHARIE & CO.
vs.
ROGERS
& HARRISON.

Where factors accept a mandate to receive produce and make insurance at the instance of the shippers they are bound to pay his draft drawn on it, instead of imputing it to the payment of debts due them by the former owner. They can only apply the surplus of the proceeds of the cargo to their own debts after payment of the bill drawn against it.

*Grymes*, for the defendants, applied for a re-hearing in this case, which was granted.

*Strawbridge*, on the part of the plaintiffs, urged that the decree should be so amended as to allow interest on the debt sued for, from the protest of the bill. He cited article 1929 of the Louisiana Code, which says, "interest is the damage due for delay in the performance of an obligation to pay money. The creditor is entitled to these damages without proving any loss; and whatever loss he may have suffered he can recover nothing more."

The case was argued by brief on the re-hearing by *Mr. Strawbridge*, for the plaintiffs, and by *Mr. Grymes*, for the defendants.

*Morphy, J.* delivered the opinion of the court.

This cause is before us on a re-hearing. A careful review of the facts and law of the case has not satisfied us of the incorrectness of our former opinion. The evidence shows that in February, 1828, the plaintiffs shipped to the consignment of defendants in Richmond, 250 hogsheads of sugar for the account and risk of J. B. Moussier, and advised them at the same time that they would value on the proceeds of the cargo to the amount of $11,000. On the 14th of March following the defendants express their regret of the necessity they were under of suffering plaintiff's draft to be noted for non-acceptance, because since the receipt of the letter of advice two mails had arrived and neither the invoice nor bill of lading had made their

EASTERN DIS. appearance. They say, " we have given a full explanation to
July, 1841.  the holder of this draft assuring him that we are sure that
ZACHARIE & CO. unless some accident has occurred which you did not
vs.
ROGERS      foresee *the transaction is entirely regular* and that *if, as*
& HARRISON.
*we expect, we receive a bill of lading for the amount of the
property intended to be shipped us, we shall forthwith accept
your draft,* the refusal of which has given us great pain, but
we trust will not be complained of by you," The sugar hav-
ing arrived that evening, the next day defendants write that
" though the quality of the sugar appeared fair and good, yet
it did not authorize so heavy a draft on it, and that it would not
pay the amount due to them by J. B. Moussier and plaintiffs'
draft also ;" " and that under such circumstances they were
compelled to allow the bill of $11,000, to remain under note
for protest," &c. It appears from the account of sales that
the sugar brought a sum more than sufficient to pay the bill
drawn against it, but defendants gave the holder of it only
$9100 ; having retained and applied the surplus of the pro-
ceeds to the discharge of their own claim against Moussier.
This suit was brought to recover the balance which the plain-
tiffs had to pay on the return of the bill.

As to the advances made by plaintiffs to Moussier, and to
secure which the sugar was placed by the latter in their hands
to be consigned to defendants, the record furnishes positive
evidence. We find in it copies of three receipts of Moussier,
one for $200, one for $1700, and one for $8444, stating that
these sums were paid by plaintiffs to him as advances on this
sugar in the course of February, 1828.

On the part of defendants it is urged that the letter of the
14th of March, 1828, contains no positive and unconditional
promise to pay the bill ; that the plaintiffs did not draw the bill
on the faith of any such promise ; that a promise to accept
between the drawer and drawee is not absolutely binding be-
tween those parties unless based upon an absolute indebtedness;
and finally that plaintiffs in drawing this bill as well as in ship-
ping the cargo acted merely as the agents of Moussier.

The transaction which gives rise to this controversy appears to us simple and of daily occurrence between planters and merchants. A factor residing in Natchez receives a planter's crop, advances him money upon it, ships it to New Orleans "for account and risk of" the planter, and advises the factor here that he has drawn a bill of exchange on the proceeds. The New Orleans factor promises to accept; can he afterwards instead of paying the bill drawn against the cotton, apply its proceeds to the payment of an old balance due to himself by the planter? Surely not. It is clear from the language used by defendants in their letter of the 14th of March that they understood perfectly, as every merchant must have done, that the condition under which the cargo was consigned to them was that out of its proceeds the bill drawn against it by the shippers was to be paid. They could mean nothing else when they say "the transaction is entirely regular and if, as we expect, we receive a bill of lading for the amount of the property intended to be shipped us, we shall forthwith accept your draft." If there could have been any doubt on the subject, it is removed by a letter of the 24th of January preceding, in which Moussier tells defendants, " I gave order this day to my friend, Mr. Zacharie, an eminent merchant of this place, to ship to your address for my account about 200 hogsheads of sugar, he will draw on you for my account $7000 or thereabouts; *the surplus of the sale of the cargo shall be to pay off the balance I owe you.*" A letter of the plaintiffs of the same date opens their correspondence with defendants. After advising defendants of the intended shipment, they request them to cover it by insurance, valuing each hogshead at sixty dollars, and defendants on the 16th of February answer that the insurance is effected as directed. By complying with this order to insure and receiving the cargo announced to them by Moussier and plaintiffs, they accepted the mandate, were bound to execute it in all its parts, and could apply to their own claim against Moussier only the surplus of the proceeds of this cargo, after the payment of the bill drawn against it; La. Code, arts.

29    VOL. XIX.

EASTERN DIS.
July, 1841.

ZACHARIE & CO.
vs.
ROGERS
& HARRISON.

Where factors accept a mandate to receive produce and make insurance at the instance of the shippers, they are bound to pay his drafts drawn on it, instead of imputing it to the payment of debts due them by the former owner. They can only apply the surplus of the proceeds of the cargo to their own debts, after payment of the bill drawn against it.

EASTERN DIS. 1810, 2958; 12 Pickering, 297; 12 Johnson, 276. The draft
*July, 1841.* was for a larger amount than was announced by Moussier or
ZACHARIE & CO. plaintiffs in their first letters, but of this change the defendants
*vs.* were advised before they received the sugar. They were
ROGERS informed that the sugar first spoken of having been found upon
& HARRISON. examination to be of an inferior quality, a second cargo of better quality and fifty more hogsheads had been substituted and that the draft would in consequence be increased to $11,000. This increase of the amount of property shipped and of the sum drawn upon it did not vary the object and conditions of the shipment as explained to defendants by Moussier. The defendants, to be sure, might have refused acceptance of this draft, modified as their engagement had been, but then they must have refused the whole control. They could not receive the cargo and refuse the bill; but with a full knowledge of the change they announce that they will accept plaintiffs' draft as soon as the bill of lading reaches them, without informing the latter that they had any claim against Moussier which they intended to satisfy out of the proceeds of the cargo in preference to the bill drawn against it. The cargo arrives and then in violation of their promise, they appropriate *its* proceeds to their own claim against Moussier, on the pretext that the plaintiffs were acting only as his agents. This promise of defendants was not one of those naked engagements which parties are free to revoke or disregard according to circumstances; it was based on a valid consideration, to wit: the receiving of the bill of lading; and they could not violate it without indemnifying the plaintiffs. Even without any positive promise on their part, we think that under the circumstances of the case and the ordinary and well known course and understanding of commercial dealings of this kind, the defendants would have been bound to apply the proceeds of this shipment to the payment of plaintiffs' draft in preference to any claim they had against Moussier.

It is therefore ordered and decreed that the former judgment of this court remain undisturbed.